IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-CR-00225 |
| | ) | |
| MOHAMMED TARIQ, | ) | |
| Defendant. | ) | |
| _____ | ) | |

MR. TARIQ'S MOTION TO SUPPRESS STATEMENTS

Mohammed Tariq, through counsel, moves this Court to suppress statements elicited by law enforcement in violation of the Fifth Amendment. Here is why:

*First*, the totality of the circumstances surrounding any pre-*Miranda* questioning of Mr. Tariq demonstrate he was in custody and that the officers' questioning was reasonably likely to elicit an incriminating response.

*Second*, even if *Miranda* warnings were provided, Mr. Tariq did not knowingly and intelligently waive his *Miranda* rights and any post *Miranda* statements failed to comport with the requirements of the Fifth Amendment.[1]

## I.    Background

On October 13, 2021, a grand jury returned an indictment charging Mr. Tariq with a single count of abusive sexual contact, in violation of 18 USC § 2244(a)(5). The charge stems from allegations that U.S. Marine security forces patrolling the Camp Upshur refugee camp saw Mr. Tariq touch a child. D.E. 2.

---

[1] Mr. Tariq respectfully reserves the right to expand the bases of this Motion following the requested evidentiary hearing.

Mr. Tariq is a 24-year-old refugee from Afghanistan. Following the fall of the Afghani government this past August, Mr. Tariq who worked alongside United States troops, fled. His flight from the Taliban took him to Qatar, then Germany, and finally to the Camp Upshur refugee camp in Quantico, Virginia.

Raised in Orgun, in a remote province in Afghanistan, Mr. Tariq's first language is Dari (Farsi), he has more limited Pashto language skills, and no English language comprehension. With little education, Mr. Tariq cannot read or write in any language. Only months after he fled his country, officers arrested Mr. Tariq.

At a hearing on this motion, Mr. Tariq, by counsel expects that the evidence will be as follows:  a little after 9 p.m. on the evening of September 22, 2021, at the Camp Upshur refugee camp (a closed facility patrolled by Marines) security forces, including Officer Becker and Villegas, confronted Mr. Tariq outside bay 10. Multiple uniformed armed security forces surrounded Mr. Tariq and awaited, close to ten minutes, for the arrival of an interpreter.  Once the Pashto interpreter arrived, officers questioned Mr. Tariq about his relationship to the child. At no point prior to their questioning did the officers provide Mr. Tariq with *Miranda* warnings. Following the questioning, security forces called the military police.

The call stated that a male—Mr. Tariq—was in custody. Military Police Officer Smith responded to the call. At an unknown location, Officer Smith interrogated Mr. Tariq who was in custody. The details surrounding the interrogation are murky. No recording, audio or visual, has been provided. No *Miranda* waiver form has been provided. However, according to a report of investigation Officer Smith, at an unknown time, provided Mr. Tariq with *Miranda* warnings. Officer Smith spoke to Mr. Tariq with

2

the assistance of  Pashto interpreter. Per Officer Smith, the interpreter stated Mr. Tariq understood the warnings provided.

From the moment officers surrounded Mr. Tariq at the refugee camp, a reasonable person would not have felt at liberty to terminate the interrogation and leave. Mr. Tariq was therefore in custody, the functional equivalent of arrest. If *Miranda* warnings were given,  Mr. Tariq did not knowingly and intelligently waive those rights. With no prior experience nor basis to understands the American system of criminal justice, Mr. Tariq could not knowingly and intelligently waive his *Miranda* rights, translated to him by a Pashto interpreter.  To that end, any statements Mr. Tariq made during the evening of September 22, 2021, must be suppressed as officers' actions failed to comport with the Fifth Amendment.

## II.    Argument

The Fifth Amendment provides, "No person . . .  shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  As a prophylactic safeguard for this constitutional guarantee, the Supreme Court has required law enforcement to inform individuals who are in custody of their Fifth Amendment rights prior to interrogation.  *See* Miranda *v. Arizona,* 384 U.S. 436, 444 (1966); *United States v. Parker,* 262 F.3d 415, 419 (4th Cir. 2001). Statements obtained pursuant to custodial interrogation without *Miranda* warnings are generally inadmissible.  *See Miranda*, 384 U.S. at 444; *Parker*, 262 F.3d at 419.

Even where Miranda warnings are provided, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda*, 384 U.S. at 475.  This means that any waiver must be "made with a full

3

awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

    A. *Surrounded by armed uniformed officers Mr. Tariq was "in custody" when security forces asked questions designed to elicit an incriminating response.*

Statements obtained pursuant to custodial interrogation without *Miranda* warnings are generally inadmissible. *See Miranda*, 384 U.S. at 444; *Parker*, 262 F.3d at 419. Absent a formal arrest, a person is in custody if "under the totality of the circumstances, [his] freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). The question at the heart of the custody analysis is "whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017)(quoting *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013)). Factors relevant to this inquiry include "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." *Hashime*, 734 F.3d at 283 (internal quotations omitted).

Here, multiple security officers, in uniform and bearing arms, surrounded Mr. Tariq. The presence of multiple officers, as well as the display of firearms indicated that Mr. Tariq was not at liberty to terminate the interrogation and leave. *See Hashime*, 734 F.3d at 283. Officers' actions restricted Mr. Tariq from returning to his current home and restricted him from accessing the people he lived with—actions that would lead a reasonable person to believe they were not at liberty to end the encounter. *See United States v. Colonna*, 511 F.3d 431, 435-36 (4th Cir. 2007) (holding that custody for *Miranda*

purposes existed where, *inter alia*, the police restricted the suspect's access to his home and separated him from family members).

That the questioning took place outside Mr. Tariq's home on the refugee camp grounds is not dispositive. *Hashime*, 734 F.3d at 284 ("We also cannot accept the argument that the home setting here rendered the interrogation non-custodial."). To the contrary, a review of the totality of the circumstances demonstrates that a reasonable person would not have felt at liberty to terminate the interrogation and leave. Mr. Tariq was, therefore, in custody.

Further, because officers knew or should have known that questioning Mr. Tariq about the child was reasonably like to elicit an incriminating response, *Miranda* warnings were required. *See Rhode Island v. Innis,* 446 U.S. 291, 300-01 (1980) ("*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or to its functional equivalent.  [T]he terms "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.").  The failure to provide the warnings prior to commencing the questioning violated the Fifth Amendment and as a result Mr. Tariq's pre-*Miranda* statements to officers must be suppressed.

> ### B. Any alleged waiver of Mr. Tariq's Miranda rights, translated in his second language, was neither knowing nor intelligent.

A Miranda waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Whether a waiver was knowing and intelligent

"requires an examination of the totality of the circumstance" including age, education, intelligence, familiarity with the criminal justice system, and the proximity of the waiver to the *Miranda* warnings. *Correll v. Thompson*, 63 F.3d 1279, 1288 (4th Cir. 1995).

Many facts—whether officers provided Mr. Tariq with *Miranda* warnings, how those warnings may or may not have been translated, and if provided, at what point during the questioning—need to be resolved at an evidentiary hearing. However, even if *Miranda* warnings were provided the totality of the circumstances demonstrate that Mr. Tariq's waiver was neither knowing nor intelligent.

At only 24 years of age, Mr. Tariq's education is so lacking that he does not read nor write in any language. A recent refugee from a remote province in Afghanistan, he has spent his limited time in the United States inside the bounds of Camp Upshur.  He has absolutely no familiarity with the American criminal justice systems, nor any basis of knowledge that would help him understand it.  *See Correll v. Thompson*, 63 F.3d 1279, 1288 (4th Cir. 1995) (explaining that even though defendant was only 24 years old and had an I.Q. of 68, he had numerous prior experiences with law enforcement and Miranda warnings and was "streetwise.").

Adding to the confusion, the interpreter who is alleged to have translated Officer Smith's questions and instructions and Mr. Tariq's responses, spoke Pashto. Pashto is Mr. Tariq's second language. A limited ability to understand English, or here, the language of the interpreter, may render a waiver invalid. *See United States v. Guay*, 108 F.3d 545, 549 (4th Cir. 1997). With little education and no experience with the American criminal justice system a translation of the *Miranda* warnings in anything other than Mr. Tariq's first language, undoubtedly left him with little ability to understand the rights "being abandoned and the consequences of the decision to abandon it."  *Moran v.*

6

*Burbine*, 475 U.S. at 421. "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.*  Here, the totality of the circumstances show that if provided with *Miranda* warnings Mr. Tariq's waiver was neither knowing or intelligent, and therefore any post-*Miranda* statements must be suppressed.

### III.    Conclusion

The totality of the circumstances surrounding Mr. Tariq's interrogation on September 22, 2021, demonstrate that a reasonable person faced with the same circumstances would not have felt free to leave. As such, for the above stated reasons, and any other reasons that may come to light after a hearing on this motion, the Court should suppress all pre-*Miranda* statements and if *Miranda* warnings were provided any post-*Miranda* statements.

Respectfully Submitted,

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
Admitted *Pro Hac Vice*
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November 2021, I will electronically file the

foregoing with the Clerk of the Court using the CM/ECF system, which will then send a

notification of such filing to all parties of record.

<div style="margin-left: 50%;">

/s/ Lauren E. S. Rosen
Lauren E. S. Rosen
Admitted *Pro Hac Vice*
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Lauren_Rosen@fd.org

</div>