IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 1:21cr225 |
| v. | ) | |
| | ) | Judge Brinkema |
| MOHAMMAD TARIQ, | ) | |
| | ) | |
| Defendant | ) | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS STATEMENT

  The United States of America, through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and Patricia Haynes, Assistant United States Attorney, hereby opposes the defendant's motion to suppress his statement. The government believes the evidence will establish that the defendant's statement was not the product of law enforcement interrogation but instead was spontaneously volunteered by the defendant, most likely with the misguided hope that it would somehow exculpate him.

  Background

  On September 22, 2021, defendant Mohammad Tariq was a resident of Camp Upshur on Marine Corps Base Quantico. Camp Upshur contains numerous large, tented structures called Bays, which are used for housing. Bays 10 and 11 house only male refugees. A little after 9 p.m., Marine Corps Lance Corporals Brandon Labrada and John Lucas were patrolling the outdoor areas adjacent to Bays 10 and 11 when they observed the defendant, who was crouched down touching a female child. The defendant was touching the child over her clothing on her waist,

back, breast, buttock, and vaginal areas.

Marines Labrada and Lucas asked Marine Corps Lance Corporals Jason Villegas and Autumn Becker to confirm what they were witnessing. The child try to get away, but the defendant pulled the child back to him and continued touching her. LCpl Villegas and Becker began to approach the defendant, who quickly stood up and began looking at his phone. Upon reaching the defendant, LCpl Becker asked him "How's your day going?" which is the typical greeting used by the Marines when interacting with the Afghan refugees. All the Marines were wearing their standard-issue uniform which included a weapon.

One of the Marines radioed for assistance. Several Marines stood with the defendant while waiting for the arrival of Military Police Officer Corporal Travis Smith, who had been advised over the radio that the Marines had a male in custody and transport was needed.

When Camp Upshur was opened, MP Smith had been instructed that the investigatory role of the Military Police on Camp Upshur was limited; specifically, MP Smith was instructed not to attempt to investigate incidents arising on Camp Upshur because the investigative role would be handled by either the FBI or NCIS. When MP Smith went to the scene his intention was to find out what dialect the defendant spoke so that he could obtain from him identifying information, including his name and age. MP Smith also understood that he was needed to provide transport.

When he arrived on the scene, MP Smith observed the defendant gesticulating with his hands as he spoke to the Afghans standing near him. MP Smith did not understand what the defendant was saying, but asked the group "Pashtu or Dari?" Someone in the group replied, "Pashtu" and MP Smith radioed for a translator. MP Smith did not attempt to speak with the

defendant while waiting for the translator.

After a short period of time a translator arrived. MP Smith shook the translator's hand, then told the translator that he did not understand what the defendant was saying. The translator walked over to the defendant and heard him speaking Pashtu. The translator then returned to MP Smith and told him that the defendant was saying that it was part of his culture and that there was nothing wrong. At the request of MP Smith, the translator then asked the defendant his name and age. MP Smith transported the defendant to the MP's office where MP Smith advised the defendant of his *Miranda* rights with the assistance of the translator. The defendant was asked no additional questions.

Argument

The government does not dispute that the defendant was "in custody" for *Miranda* purposes. *Miranda v. Arizona*, 384 U.S. 436 (1966). Even though the defendant was conversing with other Afghans, was walking around, and had not officially been taken into custody, his freedom of movement would have been curtailed by the Marines had he tried to leave. Even so, because the defendant's statement was spontaneously volunteered and was not the product of interrogation by law enforcement, it is admissible.

While it is well settled that a person subjected to custodial interrogation is entitled to the procedural safeguards prescribed by *Miranda,* it is equally well settled that spontaneous or volunteered statements that are not the product of interrogation or its functional equivalent are not barred by *Miranda,* even if the defendant is in custody when the statements are made. In *Rhode Island v. Innis,* the Supreme Court held, " 'Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding

today.' " 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (quoting *Miranda v. Arizona,* 384 U.S. at 478, 86 S.Ct. at 1629); *see also Estelle v. Smith,* 451 U.S. 454, 469, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981). The *Innis* Court held that when police conduct is reasonably likely to elicit a response, however, then *Miranda* warnings are necessary. *Innis,* 446 U.S. at 301, 100 S.Ct. at 1689. But here, the Marines did nothing that was designed to elicit a response.

The Fourth Circuit likewise held in *United States v. Rhodes,* 779 F.2d 1019 (4th Cir.1985) that spontaneous statements which were not the product of interrogation were not barred by the Fifth Amendment. *Id.* at 1032. In *Giarratano v. Procunier,* 891 F.2d 483 (4th Cir.), *cert. denied,* 498 U.S. 881, 111 S.Ct. 222, 112 L.Ed.2d 178 (1989) the Fourth Circuit found that even though the defendant was in custody, a prior threatening statement that he had made to a doctor was spontaneous and voluntary and therefore admissible. *Id.* at 488. *See also, United States v. Wright,* 991 F.2d 1182, 1186 (4th Cir.1993) (because statement was unsolicited and not made in response to any interrogation, *Miranda* did not prohibit the introduction of the statement and its warnings were not necessary).

The Marines who initiated contact with the defendant greeted him with their standard greeting, "How's your day going?" but they asked him no additional questions. In greeting him with their standard greeting the Marines did not intend to elicit a substantive response, nor would they have understood a substantive response. The Marines then stood by waiting for the arrival of MP Travis Smith.

When MP Smith arrived on the scene, MP Smith directed a question to the group gathered around the defendant to inquire what language was needed, but he did not ask the defendant any

questions because he had previously been given a blanket instruction not to conduct investigations. MP Smith's intention, once the interpreter arrived, was to request only basic identifying information from the defendant. An exception to *Miranda's* protection has been found by the Fourth Circuit for "routine booking questions 'securing biographical data necessary to complete booking or pretrial services.' " *United States v. D'Anjou,* 16 F.3d 604, 608(4th Cir.1994) (citation omitted). When the translator arrived, the translator did not question the defendant but simply translated what the defendant had been saying to the Afghan refugees in his vicinity.

    Although the defendant was in custody when he made the statement, the statement was not the product of interrogation or its functional equivalent. Rather, the government believes the evidence will demonstrate that the statement was spontaneously volunteered by the defendant in an effort to justify and excuse his actions. For this reason, his motion to suppress should be denied.

                              Respectfully submitted,

                              JESSICA D. ABER
                              UNITED STATES ATTORNEY

By:      /s/
      Patricia Haynes
      Assistant United States Attorney
      United States Attorney's Office
      Justin W. Williams U.S. Attorney's Building
      2100 Jamieson Avenue
      Alexandria, Virginia 22314
      Phone:   703-299-3700
      Fax: 703-299-3982
      Bar No. 49038

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed via ECF this 10th day of November 2021, which will send a copy of such filing (NEF) to all parties.

By:        /s/
Patricia Haynes
Assistant United States Attorney
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Bar No. 49038
Phone: 703-299-3700
Fax: 703-299-3982